Good morning, Your Honors. My name is Karen Buker for Mr. James Sherman. And in this case, the government's theory was that Mr. Sherman was the supplier of the drugs and Mr. Mills was the seller of the drugs. Mr. Sherman believes that this case should be reversed, counts one through six, because the government failed to present sufficient evidence to prove beyond a reasonable doubt that he had knowledge of any conspiracy, any drug selling by Mr. Mills. And this is important because knowledge is embraced in every drug statute. So the jury in this case, this is what they saw when you step back and you look at it. They saw Mr. Sherman and Mr. Mills after the three drug deals in 2012. They met in cars. And what is important about this is that the law enforcement, they were watching all of this. And what is very significant, they saw nothing. They saw no exchange. You would think you would see money changing hands, drugs changing hands. They saw nothing. And I think that was extremely important. And the other piece of evidence was unrecorded phone calls between the two men. They were unrecorded. Nobody knows what was said. They were actually friends. And also... Can I ask you just a preliminary question? Yes. So there were nine counts in the indictment. One of the counts was for cultivation of marijuana. During the search of your client's house, they found plants. And you took a position in regard to count nine, which is the cultivation charge, that you were not really objecting to that. Is that correct? That's correct. That's not part of our argument. Okay. That's not part of your argument. All right. So I looked at the judgment here, and I noticed that the sentences were 120 months on all counts concurrent. That means that if you're not objecting to the cultivation charge, that's count nine, that's a sentence of 120 months. And so that's essentially the same sentence that all of the other counts called for. And I guess then it becomes a question, at least in terms of the sentence, that this becomes somewhat academic. Is that correct, or is that not correct? I thought about that, and I didn't put this in the papers. I'm preparing for oral argument. The drug charges were subject to a mandatory minimum of 120 months. I don't think the marijuana does. And one of the things I was going to add at the end of the argument is should it get remanded because the counts are vacated, he needs to be resentenced to the marijuana charges. Why would he be resentenced to the marijuana charge if you're not objecting to the marijuana charge? And that's a 120-month sentence. Wouldn't you have difficulty getting a resentencing on count nine, even if you got all of these others remanded? Well, it's my understanding that counts eight and nine are not subject to the mandatory minimum of 120 months. That would make the difference in my mind, and that would give the opportunity for the district court judge. And I don't know what that is right now because I didn't figure it out, but it's not the statutory, you know, the mandatory minimum of 120 months. I believe that. It would be a different sentence in the district court. And thank you for bringing that up because I wanted to bring that up sometime during my argument. That's the argument you started to elaborate on. There was a lot of other circumstantial evidence here, though, wasn't there? The evidence that was presented is what I just stated, the two-man meeting in the cars, the unrecorded conversations with no one knows what was said. Very close to the transactions. Right. But I was looking at the case law of the circuit, and Mr. Sherman's conduct is not criminal under Ninth Circuit law. The law in the circuit provides that the mere presence with someone committing crimes is not enough to support a conviction. It's not a crime to be acquainted with criminals or be physically present when they're committing crimes. And this is the case, USA v. Esquivel-Ortega. And that, I believe, goes to the heart of this matter. Because I understand what you're saying, Your Honor, because it was the timing, right? But then the jury would assume, based on the timing, maybe he's guilty. But that is not the law. He has to be proven guilty beyond a reasonable doubt. And there's in Esquivel-Ortega, there's a line that says, our criminal system is not based on assumptions. There must be sufficient evidence to sustain conviction. And I believe that goes to the heart of this case. What do you need to prove beyond a reasonable doubt to have a conviction? And I don't believe the jury can look at this case and assume, okay, well, they talked to each other before the drug deals, but no one knows what was said. They met after the drug deals, but no one saw anything. They saw him talking. Like in the case where there was aerial surveillance, the plane flew down. They just saw them talking. So I don't... I thought, I mean, the government has obviously said in their brief that they're relying upon, number one, the existence of the conspiracy. That's the one overall conspiracy. And then the Pinkerton theory, the Pinkerton case, which would say every offense in furtherance of the conspiracy results in a guilty verdict. So the jury, I think, is not going to be able to prove that. The real heart of your argument is the multiple versus single conspiracy. Your argument is that there's no proof of a single overriding conspiracy. It's all multiple conspiracies. And tell me what elements you look to, to distinguish in a fact pattern, the difference between multiple conspiracies and a single overriding conspiracy. Well, in this case, Your Honor, the indictment charged a single overarching conspiracy. But if you look at the facts, there was two conspiracies, we argue. The conspiracy in 2012 and the second conspiracy in 2013. In 2012, there were three drug deals. And I don't believe Mr. Sherman was involved. But let's say for this argument he was involved in 2012. There's nothing connecting. There's no overall agreement, and that's the law, to connect 2012 to 2013. So are you saying there's two conspiracies here? Multiple conspiracies, two, yes. Two. Okay. So then you go to 2012. There's a gap in time, 2012 to 2013. One year. Right. So you take the first three convictions you have. Are those all part of the same conspiracy? Yes. Okay. So what do we do with that? If you're acknowledging that, in fact, the government has established conspiracy for those first three, does it make a difference as to whether the next three is a different conspiracy? I'm arguing, Andrew, that it's our argument that Mr. Sherman was not involved in those first three. Okay. So it becomes academic about the conspiracy. You're just, he's not involved. He's not involved. But if the court finds that he was, then he's not. Our argument is there's no overall agreement from 2012 conspiracy to the 2013 conspiracy. He wasn't seen in all. So in that respect, there's multiple conspiracy, conspiracies, the indictment charge a single conspiracy. So under the law, he can't be, the conviction can't stand. Go ahead. Go ahead, Judge Tashima. I may have misunderstood the argument you make, at least in your brief, to some extent. But my understanding was, at least in part, or maybe alternatively, one of your theories is that, you know, doesn't matter whether your client was involved or caught in the first conspiracy. If in fact, there were multiple conspiracies because that crime was in charge against him. Isn't that part of your argument? That he was not charged with two conspiracies so he can't be, he can't be indicted or convicted of the separate conspiracies? That's right, Your Honor. Under that argument, that's correct. Because one view of this case, it appears that there were multiple conspiracies. And there's a U.S. Supreme Court law, U.S. v. Miller, I believe, that states if the indictment shows, charges one conspiracy and the evidence shows multiple conspiracies, the conspiracy conviction cannot stand. So what you're saying is that the government should have, your argument is that the government should have alleged two separate conspiracies. Under that, under that separate argument, yes. I'm just talking about theoretically speaking. I'd like to get back to Pinkerton. I don't want to interrupt anybody. But in my argument that Pinkerton liability does not apply in this case because our argument is there is insufficient evidence that he had joined any conspiracy. Right. Then Pinkerton. But why, let me, so I had asked you earlier why, what you're asking us to do is to overturn the jury's verdict because there was insufficient evidence. Yes, Your Honor, on counts one through six. Right, counts one through six. So as I asked you earlier, why isn't there enough evidence in the record to, including reasonable inferences that are perfectly permissible? Because For the jury to draw the findings and conclusions that they did. One of the cases I relied on is, did the circuit reverse convictions for drug conviction in which the government produced Could you just speak a little bit directly into the mic? Sorry. There's a case for Amos Roscon, which I believe had more evidence against the defendants and this court, they were found guilty and this court reversed it. And in that case, the defendants, they were present when they were hearing the negotiations for the drug prices. One defendant drove a truck. Another defendant was a passenger in a truck that followed closely behind the vehicle carrying the drugs and one was a lookout. And that wasn't enough. And to get back to your question, the heart of it is the fact that the jury looked at the fact that there were calls made right around the time the drug deals were going to happen, and then all of a sudden they meet after the drug deals. But when you look at the evidence, when they meet, nothing happens. They're like friends meeting. They're chatting is what they're doing. My case would be really different if the agents actually saw, perhaps, Mr. Mills take a wad of money and hand it to Mr. Sherman. Well, then, okay, then you can make a connection. The jury can't make a connection. So how do you respond to the tape recordings of the interviews with Mr. Mills and the CI, which is taped by law enforcement, in which Mr. Mills says, just on one example, let's say, my supplier, first of all, makes all the crack cocaine, but then my supplier is bringing the cocaine to the house. And then a short time later, your client shows up at Mr. Mills' house. And then soon thereafter, the drug transaction happens between Mr. Mills and the confidential informant. Isn't that the kind of evidence which really links your transaction? I read that part of the excerpts. I read that part of the excerpts a couple of days ago. Okay. And when you really look at it, Mr. Mills does not identify Mr. Sherman. He just calls him his source. Doesn't just give enough description that that is Mr. Sherman. He says his source is going to be bringing the drugs. Soon thereafter, Mr. Sherman arrives at his house, and soon thereafter, the drug transaction happens. Isn't there a reasonable inference that the source is, in fact, Mr. Sherman, who showed up with the drugs just before the transaction? I don't think there's enough there, because no one actually saw the drugs. I think that you assume. That's an exception. And that's what I think the heart of the argument is. The jury can't assume that happened unless they have something that would connect it. Maybe they saw him carrying drugs, or maybe they saw something. And that's the case, U.S. v. Esquivel-Ortega, says the jury can't assume. And I believe that's the heart of the case. Did you want to save some time for rebuttal? In fact, I'll have to add some time for you. All right. Let's hear from the government. May it please the Court. My name is Jason Hitt. I'm an assistant United States attorney in the Eastern District of California, and I was trial counsel below. I think Judge Sessions hit the nail on the head in interpreting the evidence in this case. And one of the fundamental problems with the Sherman brief is the arguments are the ones that were made and rejected by the jury. Reviewing for plain error, particularly under Neville's, the inferences that the Court has teased out during the opening argument are precisely the ones reserved to the Esquivel-Ortega is first on the evidence. The facts can be readily distinguished. But more importantly, that case was decided before Neville's. And what Neville's made clear, and what Esquivel-Ortega, a fair reading of it, did wrong, is it does this idea of dividing the evidence into separate lines of proof, and then presenting theoretical and speculative possibilities not fairly raised by the record. And looking for hypotheses drawn from evidence, which the jury may have disbelieved. Instead, what Neville's clarified, and what the Court has as its duty in reviewing the evidence here, is when faced with inferences, must presume, even if it does not affirmatively appear in the record, that the trier of fact resolved any conflicts in favor of the prosecution and must defer to that resolution. So when you hear arguments about what might have been said, what may have happened during the meetings, the government's view is accepted by the In this case, as the Court pointed out, you have recorded admissions that are predictive of the behavior, that is, my supplier is coming over for the purpose of showing me drugs, and then that happens. And it's backed up and verified by intersecting pieces of evidence, including the phone records, that show critical spikes in phone communications when the CI first makes the order, when the deal is about to go down, and when the deals occur. Importantly, too, for this time between the next deal in 2013, the pattern picks up perfectly in 2013. In other words, the CI makes the call, the phone activity between Mr. Sherman and Mr. Mills picks up again. And importantly, in 2013, Mr. Mills makes another recorded admission referring to his supplier. And it makes clear that that ongoing conspiracy is still alive and well. So do we know anything about what happened? Is there anything in the record about what happened during that one-year period? There isn't. Why does it go, you know, flat? There isn't, but I can tell the Court, because I was also the AUSA for the investigation. There was a separate individual, similar to Mr. Mills, where there was a sort of a branch-off investigation into that person. And it was very similar in the way that it went down with Mills, Sherman. This other person was not indicted, so I won't name them, but that was part of the practical reason is DEA sort of a similarly-situated person like Mills. Well, tell me, what links, in your view, or the evidence, I guess, the 2013, the two counts related to 2013, and the three counts in 2012? So I think the links are very direct. The first is, as I mentioned, when Mills is reacquainted with the supplier and says, or source, and says, I just spoke to him, and sure enough, the phones reveal once again, it's Sherman. It's the same number that was in 2012. So he tells us in a recorded statement. In addition, when we hit the house at the end of the case, we find multiple pieces of evidence demonstrating that Sherman was, in fact, the source. Not only was Mills seen going to that house throughout the brief, but it is argued in the excerpts of record in closing, and it was admitted in evidence. The adulterant, the heroin adulterant found in the refrigerator at Sherman's residence, it was in a very unique plastic bag that had black handles and some white writing on it. What we figured out in closing argument and what was received in evidence as exhibits, that unique black-handled plastic bag matched the type of bags that were provided by Mills when selling the drugs to the informant throughout the individual links. In addition, the phone number that Sherman had used in both 2012 and 2013 to communicate with Mills, that was found on checkbooks with his name on it. He stopped using that phone almost immediately after Mills gets arrested, and we seize his phone and confirm that's the phone that we've been talking to Sherman and the CS. And then to Judge Sessions' point, the Bibaro factors are kind of the answer to how you decide between multiple versus single. And here, I would submit all four strongly support that the jury did not plainly err in finding one single conspiracy. Sherman didn't ask for that pattern instruction that's available. It is a defense that we've had in trials. That wasn't the defense. The defense really was more... He never asked for the multiple conspiracy instruction? Correct. And if you read the closing argument, which was included in Appellant's excerpt of record, the argument is very similar to the one made by counsel to this court. That is, hey, we don't know what Mills and Sherman were talking about. They're old friends. You don't have recordings. It's not a wiretap. Mills is a drug addict, maybe. Maybe he's really just a drug dealer and he's dragging his old friend. All of those arguments were fair arguments to make. They just were rejected. And at this point, I think the standard really precludes a search of getting behind that verdict. And so, in sum, the Bibaro factors, particularly the fourth one, which is commonality or continuity, MnCOF is this court's precedent on drug conspiracy. And I think one of the important factors... So the first three, I think, are just plainly on point. The identity of the participants stay the same. The duration, frequency, it's always heroin or crack. It's always Mills and Sherman. But MnCOF stands for a proposition that I think is important here in explaining how they pick up right where they left off in 2012 to 2013, and that is it shows a mutual trust. I think you can actually turn that argument around and say these folks were so well enmeshed and they trusted... There was so much trust between these two men in a very serious criminal conspiracy that it maintained its strength in 2013. And indeed, Mills reveals in his admissions in 2012 that they had started before 2012. So they've got a long, long-term relationship, and I think those are the important inferences supported by the record. And I'm prepared to submit unless you have questions. And the pattern includes the consistent phone calls early on, and then during and after, and then tracing Mills back to his house, that's all consistent from 2012 to 2013? Yes, Your Honor. The call pattern never deviates from 2012, the three deals in 2012, to the deal in 2013. And importantly, even the takedown day, July 13th, when we have ordered up a lot of drugs from Mills, and Mills is providing kind of real-time updates. Hey, my source got spooked. He thought he saw law enforcement. Turns out he was right. FBI got burned. The phone connections are still going on as of the day of the takedown. It's Mills and Sherman communicating. Mills making admissions to the CS that he's just talked to his source, and then we see in the phone records Mills has just talked to Sherman. That's consistent through the entire conspiracy. Is there anything in the record which explains the delay in trial? He was arrested in 2013. The trial wasn't for years thereafter. What happened there? I can tell you what happened. So there's an interesting part. So Sherman is not at his house during the takedown. Months, I think, later, private counsel called, and he turned himself in. Mr. Sherman went through at least two or three trial-level counsel. He had retained counsel initially, fired that lawyer, and then there were a number of appointed panel lawyers that came on. So it kept pushing back his trial date. Seeing no further questions, I will thank you and have a good weekend. Okay. Thank you. We'll hear a rebuttal. Just put two minutes on the clock for him. Your Honor, I just have a brief statement. It is true. Sure. This is reviewed under plain error because the defense counsel at the end of the case, when he moved for judgment of acquittal, only asked us to count six. So it is under plain error. But I'd like to point out that this Court may reverse under plain error review if the record clearly shows that the evidence was insufficient. And this is the case U.S. v. Garcia-Guizar. No other questions? No. Okay. Thank you, counsel. We thank both counsel for their fine arguments this morning, and the matter is submitted at this time.
judges: TASHIMA, PAEZ, Sessions